848 So.2d 199 (2003)
James D. HOBSON, Jr. and Joseph G. Strickland, Appellants,
v.
CITY OF VICKSBURG, Mississippi and the Kansas City Southern Railway Company, Appellees.
No. 2001-CA-01640-COA.
Court of Appeals of Mississippi.
June 17, 2003.
*200 David M. Sessums, Vicksburg, attorney for appellant.
Steven Todd Jeffreys, Bobby D. Robinson, Vicksburg, Charles Edwin Ross, Jackson, Nancy Davis Thomas, Vicksburg, attorneys for appellee.
Before MCMILLIN, C.J., LEE and IRVING, JJ.
McMILLIN, C.J., for the court.
¶ 1. The appellants in this case, James Hobson and Joseph Strickland, own certain real property lying within the corporate limits of the City of Vicksburg. They contend that they have been denied reasonable access to their property along Fairground Street because of the City's decision to close an iron bridge that carried the roadway over a grade level railroad crossing. Hobson and Strickland *201 maintain that the City has a presently-enforceable contract with the railroad (Kansas City Southern Railway Company) that requires the railroad to maintain the bridge and that the City has wrongfully failed to enforce the contract, choosing instead to close the bridge to public traffic. Hobson and Strickland commenced this action in Warren County Circuit Court seeking a writ of mandamus to compel city officials to enforce the City's rights under the contract with the railroad by requiring the railroad to repair and maintain the bridge to a level that it would again be safe for vehicular and pedestrian traffic. In the alternative, Hobson and Strickland asked that the City itself be compelled to repair and re-open the bridge. The City defended the action, raising several defenses, but also brought the railroad in as a third-party defendant. The third-party complaint essentially asserted that, if the City were found to have any responsibility to Hobson and Strickland to repair or maintain the bridge, then the railroad should assume those responsibilities under the terms of the contract.
¶ 2. The circuit court granted the City's motion for summary judgment on the basis that mandamus would not lie because Hobson and Strickland had an adequate remedy at law, which the court concluded was an inverse condemnation action for damages associated with the loss of access caused by the closing of the bridge. This ruling had the effect of rendering the third-party complaint moot since that cause of action was contingent on the City having been adjudicated to have some sort of liability to Hobson and Strickland.
¶ 3. We affirm.

I.

Facts
¶ 4. The contract in question was entered into on May 23, 1895, between the City and Kansas City Southern's predecessor in interest, the Yazoo and Mississippi Valley Railroad Company. The parties do not appear to contest the terms of this contract that are relevant to the issues before this Court. The railroad was permitted to lay its tracks across the right of way of Fairground Street, in exchange for which the railroad agreed to construct and maintain an iron bridge over its tracks for use by vehicular and foot traffic using Fairground Street. Over time, the bridge fell into serious disrepair to the point that it was determined to be a safety hazard. In the exercise of its police power to protect the health and safety of the general public, the City physically barricaded the bridge in approximately 1993 and in 1995, the City's official minute book reveals the adoption of "an Order closing the bridge on Fairground Street over railroad tracks to traffic per recommendation of City Engineer."
¶ 5. In their complaint, filed July 7, 2000, Hobson and Strickland assert that they are the owners of real property abutting Fairground Street and that the street represents their only access to their property. The complaint seeks the issuance of a writ of mandamus "directing the City of Vicksburg to enforce the terms and provisions of the aforesaid indenture and agreement of May 23, 1895, so as to require the Railroad Company to repair and maintain the overhead iron bridge ... or to undertake itself the opening and maintenance of Fairground Street...."
¶ 6. The City asserted several defenses, including a claim that the action was barred by the applicable statute of limitations and one that a writ of mandamus would not lie to compel what was a discretionary act. As noted earlier, the circuit court granted summary judgment based on its conclusion that the property owners *202 had an adequate remedy at law, thereby making the extraordinary remedy of mandamus inappropriate under existing law. The circuit court did not reach the issue of the statute of limitations. Nevertheless, the City continues to advance that theory of defense on appeal, pointing out that the City formally voted to close the bridge to traffic in 1995, more than three years prior to the commencement of this action.
¶ 7. We find it unnecessary to reach the question of whether an inverse condemnation action is an appropriate remedy in this case in determining that a writ of mandamus was not available to Hobson and Strickland. Substantial authority exists for the proposition that private citizens may resort to the remedy of mandamus to compel public officials and bodies to act only as to non-discretionary duties plainly required by law. USPCI of Mississippi Inc. v. State ex rel. McGowan, 688 So.2d 783, 789 (Miss.1997); Jackson County Sch. Bd. v. Osborn, 605 So.2d 731, 734 (Miss.1992); Powell v. State Tax Comm'n, 233 Miss. 185, 101 So.2d 350, 352-53 (1958). Even assuming for sake of argument that the City had a clear contractual right to compel the railroad to undertake to repair and maintain the bridge in question, there is no authority of which this Court is aware for the notion that a public body is compelled as a matter of law to insist on the strict enforcement of every available obligation owed it under any and all contracts and agreements entered into by the body. The decision to seek full compliance or to simply forego the enforcement of contract rights that might arguably exist is one that necessarily involves substantial exercise of discretion on the part of the governing body.
¶ 8. Considerations not directly related to the existence of bare contractual rights inevitably enter into the equation, including such fundamental considerations as whether the cost of enforcing compliance outweighs any benefit to be derived to the public body. Aside from these evident considerations of a general nature, we note that the railroad in this case apparently was prepared to contend that it had no contractual responsibilities under the contract, raising the distinct possibility of protracted litigation on the part of the City to determine if enforceable rights even existed. For these and other reasons, we are satisfied that a decision by a governmental body to attempt to enforce contractual rights alleged to exist in its favor is so caught up in discretionary decisions at almost every step of the process that it is not the kind of non-discretionary duty that can be compelled by an action in mandamus brought by a private citizen who claims that he would be benefitted in some way by the third-party's performance.
¶ 9. It is a standard practice of this Court to affirm the decision of the trial court when we conclude that the right result has been reached even though the trial court employed reasoning different from that which we decide controls the issue. Mason v. Southern Mortg. Co., 828 So.2d 735, 738 (¶ 15) (Miss.2002). We conclude that to be the case in the matter of Hobson's and Strickland's claim of entitlement to a writ of mandamus against the City.
¶ 10. This conclusion renders moot any consideration of the statute of limitations defense asserted by the City and resisted by Hobson and Strickland based on legal arguments that we need not reach on the merits.
¶ 11. There is left the separate alternative claim by Hobson and Strickland that, notwithstanding any contractual duties of maintenance and repair belonging to the railroad, the City has an on-going duty to them to properly maintain *203 and operate all of the public streets of the municipality, which would include all portions of Fairground Street, including the bridge that is now closed. Under this alternate theory, whether or not the City seeks the assistance of the railroad in rendering the bridge safe for public travel, the City has an independent duty to repair and maintain the bridge. A municipality, in the operation of the public streets within the municipality, has the authority under Section 21-37-7 of the Mississippi Code "to close and vacate any street or alley, or any portion thereof." Miss.Code Ann. § 21-37-7 (Rev.2001). The order in 1995 of the City closing the bridge to public traffic appears to have been an exercise of that authority. Such a closing would, of necessity, mark the end of the City's previously-existing duty to suitably maintain and repair this part of the public streets of the municipality. For that reason, the assertion of a separate duty to repair on the part of the City independent of whether the railroad had some similar duties by way of contract must fail.
¶ 12. Admittedly, the statute quoted in part above proceeds to say that no such closing may be accomplished "except upon due compensation being first made to the abutting landowners upon such street or alley for all damages sustained thereby." Miss.Code Ann. § 21-37-7 (Rev.2001). Hobson and Strickland claim in their complaint that they are abutting landowners to Fairground Street. Whether their land actually abuts the "portion thereof of Fairground Street that was closed by the 1995 action of the City within the meaning of Section 21-37-7 is not clear and would necessarily have to be the subject of an evidentiary inquiry. In all events, Hobson and Strickland made no claim in their complaint for compensation under this code section and, for that reason, our affirmance of the trial court's judgment is without prejudice to any right of compensation that these landowners may yet have under the statute.
¶ 13.THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.